United States District Court
Southern District of Texas

**ENTERED**

July 17, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| I.H., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-1943 |
| | § | |
| WARDEN, HOUSTON CONTRACT | § | |
| DETENTION FACILITY, *et al.* | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING WRIT OF HABEAS CORPUS

Petitioner I.H.[1] is detained in the custody of officials with Immigration and Customs

Enforcement (ICE). Through counsel, the petitioner filed a petition for a writ of habeas

corpus under 28 U.S.C. § 2241 (Dkt. 1).

The petition and supporting documents state that the petitioner is a native and citizen

of Iran; that he entered the United States on August 23, 2023, and sought political asylum;

that respondents released him on his own recognizance on November 10, 2023; that he has

no criminal history or charges and no history of violence; that he is employed; and that he

has ties to his community and church.  He claims that officials detained him on December

26, 2025, when he voluntarily appeared for supervision appointment, and an immigration

judge denied bond for lack of jurisdiction.  He brings claims under the Due Process Clause,

among others, and seeks release from custody.

---

[1]     The petitioner's full name is protected by the limited protective order entered on May 11,
2026 (Dkt. 13).

1 / 14

The federal respondents filed a motion for summary judgment (Dkt. 20) arguing that the petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and his habeas claims lack merit.  They state that the petitioner failed to check in with immigration authorities on December 17, 2025, and was detained on December 26 (Dkt. 20, at 2; Dkt. 21). They do not otherwise contest the material facts recited by the petitioner.  The petitioner's response states that he incorrectly understood the date of his check-in appointment on December 17, but appeared voluntarily on both December 25 and 26 and, at the second appearance, officials detained him (Dkt. 22, at 6 n.1).  He claims that he was not evading or hiding from authorities, but rather presented himself in connection with his immigration obligations, and that his misunderstanding of the date does not demonstrate flight risk (*id.*).

On February 6, 2026, the Fifth Circuit held in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), that two petitioners who has been present in the United States for many years, and who had not been apprehended by immigration officials before the detention at issue in the case, were subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  The Court does not base this opinion on the statutory text but instead turns to the petitioner's claim that her current detention violates her rights under the Due Process Clause.  The Court previously addressed due-process claims in the context of 28 U.S.C. § 2241.  *See, e.g.*, *Vilar Ruiz v. Warden, Montgomery Proc. Ctr.*, No. 4:26-cv-1307, 2026 WL 1707199 (S.D. Tex. June 12, 2026); *Valdes Soria v. Warden, Houston Cont. Det. Facility*, No. 4:26-cv-1272, 2026 WL 1658536 (S.D. Tex. June 8, 2026); *Chowdhury v. Warden*, No. 26-cv-1126 (Dkt. 18) (S.D. Tex. June 4, 2026); *Avila Perez v. Warden*, Civil

2 / 14

Action No. 4:26-957 (S.D. Tex. Apr. 28, 2026); *Gonzalez Monrreal v. Warde*n, Civil Action No. 4:26-925 (S.D. Tex. Apr. 27, 2026); *Barrera Leon v. Warden*, Civil Action No. 4:26-1341 (S.D. Tex. Apr. 2, 2026); *Gallegos Perez v. Noem*, Civil Action No. 4:26-351 (S.D. Tex. Apr. 2, 2026); *Cruz Osorio v. Noem*, Civil Action No. 4:25-6390 (S.D. Tex. Apr. 2, 2026); *Rozo-Teran v. Bondi*, Civil Action No. 4:26-243 (S.D. Tex. Mar. 16, 2026); *Navarette-Garcia v. Bradford*, Civil Action No. 4:26-1503 (S.D. Tex. Mar, 16, 2026); *Delgado-Rodriguez v. Tate*, Civil Action No. 4:26-650 (S.D. Tex. Feb. 25, 2026).

The Constitution guarantees due process of law to every person in the United States, regardless of the person's immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); *see A.A.R.P. v Trump*, 605 U.S. 91, 94 (2025) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act).

The Court notes at the outset that the petitioner in this case challenges only his detention, and not his right to relief from deportation or removal. Courts across the country have recognized that as-applied due process challenges to detention without an individualized hearing are not foreclosed by *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), or other Supreme Court precedent.[2]　*Lopez-Campos v. Raycraft*, 175

---

[2]　　In *Thuraissigiam*, the Supreme Court held that a noncitizen seeking "initial entry" to the United States enjoys only the rights provided by statute because the "power to admit or exclude aliens is a sovereign prerogative" over which the political branches have plenary authority. *Thuraissigiam*, 591 U.S. at 139-40 (cleaned up) (considering case regarding noncitizen detained 25 yards from the border and for whom immigration officials rejected his "credible fear" claim for purposes of political asylum).　However, a challenge to detention, rather than to immigration

F.4th 713, 732-34 (6th Cir. 2026); *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 796-97 (S.D. Tex. 2026); *Vieira v. De Anda-Ybarra*, 806 F. Supp. 3d 690, 697-700 (W.D. Tex. 2025); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 681-85 (W.D. Tex. 2025); *Rincon*, 810 F. Supp. 3d at 111-13; *Castro Coneo v. Almodovar*, No. 25-CV-09850 (NSR), 2025 WL 3754079, at *5 (S.D.N.Y. Dec. 29, 2025); *Destino v. FCI Berlin, Warden*, No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *4 n.6 (D.N.H. Dec. 24, 2025) (noting a "growing consensus" among district courts and collecting cases). Many cases cited above also distinguish *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and *Demore v. Kim*, 538 U.S. 510 (2003), from the detention challenge at issue in this case. *See, e.g.*, *Lopez-Campos*, 175 F.4th at 734; *Rodriguez v. Frink*, 823 F. Supp. 3d 678, 682-84 (S.D. Tex. 2026); *Bonilla Chicas*, 821 F. Supp. 3d. at 792, 794-96; *Rincon*, 810 F. Supp. 3d at 110-14; *Destino*, 2025 WL 4010424, at *3-*8.[3] The Court agrees with this consensus and thus proceeds to review

---

proceedings, does not implicate the "sovereign prerogative" on which *Thuraissigiam* relies. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 111-13 (D. Mass. 2025) (discussing "entry fiction" doctrine and its purposes).

[3]     In *Demore*, the Supreme Court considered a facial challenge to 8 U.S.C. § 1226(c), a statutory provision that provides for mandatory detention of non-citizens who have been convicted of certain crimes, and held that the facial challenge failed. In so holding, the Court discussed extensively the fact that Congress enacted § 1226(c) based on evidence of increasing criminal activity by criminal aliens, as well as high rates of recidivism and flight. *Demore*, 538 U.S. at 518-19. The Court also relied on the fact that a detainee under § 1226(c) was a "criminal alien" who was detained for "the limited period of his removal proceedings." *Id.* at 531; *see id.* at 529-31 (citing facts in the record showing that detention under § 1226(c) lasted for an average of 47 days, and that 100% of the detentions lasted five months or less). Finally, the Court noted that the detainee in *Demore* had been afforded procedural protections, including "the full procedural protections our criminal justice system offers" for his prior convictions and the opportunity for a "*Joseph* hearing" at which he would have been entitled to raise any non-frivolous argument to demonstrate that he was not properly included in the mandatory detention category. *Id.* at 513-14 & n.3.

the petitioner's constitutional claim.[4]

When adjudicating a procedural due-process claim from a civil detainee, courts apply the three-part test from *Mathews v. Eldridge*, weighing and balancing the following factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Regarding the first *Mathews* factor, the petitioner has a liberty interest that the Due Process Clause protects.  Freedom from physical detention is "the most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690. A noncitizen who has lived for years in the interior of the United States and established connections in the country acquires a protectible liberty interest. *Thuraissigiam*, 591 U.S. at 107 ("aliens who have established connections in this country have due process rights in deportation proceedings"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"); *Landon v.*

---

[4]    *See also I.N.S. v. St. Cyr*, 533 U.S. 289, 304–05 (2001) ("a serious Suspension Clause issue would be presented" if a statute deprived federal courts of habeas jurisdiction to review "pure questions of law").

*Plasencia*, 459 U.S. 21, 34 (1982) (noncitizen has a "weighty" interest in his or her right "to stay and live and work in this land of freedom" and to "rejoin . . . immediate family").

As stated above, the petitioner lived in the United States for over two years on release, has no criminal history, is pursuing relief from removal, is employed, and has community ties.  Moreover, the respondents previously released him from detention on his own recognizance. His current detention began on December 26, 2025, when he appeared voluntarily for a check-in appointment at ICE.  In the time he lived in the country before his detention, the petitioner acquired a protected liberty interest.  *See Thuraissigiam*, 591 U.S. at 107; *Vieira*, 806 F. Supp. 3d at 700; *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025); *Lopez-Arevelo*, 801 F. Supp. 3d. at 685-86; *Destino,* 2025 WL 4010424, at *12; *Barros v. Noem*, No. EP-25-CV-488-KC, 2025 WL 3154059, at *4 (W.D. Tex. Nov. 10, 2025).  The first factor weighs heavily in the petitioner's favor.

The second *Mathews* factor is the risk of an erroneous deprivation of the petitioner's liberty interest by the procedures used for his current detention, as well as the probable value of additional safeguards.  "Once it is determined that due process applies, the question remains what process is due."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Due process requires adequate procedural protections to weigh the governmental interest against that of the individual.  *See Zadvydas*, 533 U.S. at 690 ("[G]overnment detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or, in certain special and narrow[,] nonpunitive circumstances where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical

restraint") (cleaned up).  "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (cleaned up).  Immigrant detainees "are entitled to notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (cleaned up); *see Lopez-Campos*, 174 F.4th at 732 ("The hallmark of procedural due process is notice and an opportunity to be heard") (cleaned up).

The respondents argue that the petitioner's claim should be denied based on *Demore*, 538 U.S. 510, which rejected a facial due-process challenge to a different statute, 8 U.S.C. § 1226(c).  However, the Court does not consider in this case whether § 1225(b)(2) is facially unconstitutional, that is, "unconstitutional in all of its applications." *See United States v. Morgan*, 147 F.4th 522, 526 (5th Cir. 2025), *cert. denied,* No. 25-6677, 2026 WL 568341 (U.S. Mar. 2, 2026) (cleaned up); *Bonilla Chicas*, 821 F. Supp. 3d at 792.  Instead, the Court considers whether § 1225(b)(2), "though constitutional in some circumstances," has been unconstitutionally applied to the petitioner. *See Morgan*, 147 F.4th at 526.[5]

---

[5]     Apart from the fact that it decided a facial challenge, *Demore* is distinguishable for additional reasons.  First, the statute at issue in *Demore* applied to a specific subset of non-citizens convicted of certain crimes. *See* 8 U.S.C. § 1226(c).  In contrast, § 1225(b)(2) is a broad, "catch-all" provision. *Buenrostro-Mendez*, 166 F.4th at 499 (citing *Jennings*, 583 U.S. at 287); *see id*. at 505 (holding that, although "[i]t is true that § 1226 applies to aliens in the United States," the application of § 1226 "does not preclude § 1225 from also applying to such aliens" because "the two provisions overlap").  Moreover, as stated above, the *Demore* petitioners had received criminal procedural protections, as well as the opportunity for a *Joseph* hearing, and were detained for an average of 47 days.  In the case at bar, however, the petitioner has received no procedures to protect the liberty interest impacted by his current detention, and nothing in the record suggests that the length of detention will be limited.  Finally, unlike in *Demore*, nothing in the record in this case suggests that the petitioner's detention under § 1225(b)(2) is justified by evidence of danger to the

Civil detention can be permissible based on the government's showing that the person is a danger to the community. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746, 748-49 (1987) (the government's regulatory interest in community safety can outweigh an individual's liberty interest in avoiding pre-trial detention if the person poses a danger) (collecting cases). In such cases, the civil detention must be "limited" and "subject to strong procedural protections." *Zadvydas*, 533 U.S. at 691; *see Kansas v. Hendricks*, 521 U.S. 346, 357(1997) ("We have consistently upheld [forcible civil detainment of persons who pose a danger to public health and safety] provided the confinement takes place pursuant to proper procedures and evidentiary standards"); *Salerno*, 481 U.S. at 750 (upholding bail reform statute which required the government, "[i]n a full-blown adversary hearing," to "convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person").

Here, the petitioner has been detained for over six months and the respondents provide no information about when the detention will end. Moreover, the respondents have not argued that the petitioner's current civil detention is justified by his danger to the community, flight risk, or any other weighty government interest, and do not contest the petitioner's statement that he has no criminal record. Rather, they argue that danger and flight risk are irrelevant under the plain language of § 1225(b)(2), thus ending the inquiry

---

community. For all of these reasons, *Demore* does not foreclose the petitioner's as-applied challenge. *See Bonilla Chicas*, 821 F. Supp. 3d at 794-96 (distinguishing *Demore*); *Rincon*, 810 F. Supp. 3d at 113-14 (distinguishing *Demore*); *Destino*, 2025 WL 4010424, at *8-*9 (distinguishing *Demore*).

(Dkt. 20, at 4-6 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)). However, the question of whether procedural safeguards for the petitioner's liberty interest are adequate is a constitutional question, not a statutory one, and a statute may not deprive a person of rights that are constitutionally guaranteed. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020) ("the Constitution, not statutes, determine the minimum procedures that due process requires").[6] They identify no procedures afforded to the petitioner to provide notice, an opportunity to be heard, or any individualized determination regarding his current detention. To the extent the respondents rely on the Notice to Appear dated

---

[6]     Moreover, *Doe* is distinguishable on several grounds. The plaintiff in *Doe* challenged a Connecticut statute that mandated registry of sex offenders based only on the person's past conviction for a sex offense, arguing that the registry requirement without a hearing to show he was *currently* dangerous violated his procedural due process rights. The Supreme Court held that, because current dangerousness was irrelevant under the statute, the plaintiff had no procedural due process right to a hearing. The Court joins other courts in holding that *Doe* is distinguishable from the facts and issues in this case. *See*, *e.g.*, *Betancourth v. Tate*, 822 F. Supp. 3d 762, 766–67 & n.4 (S.D. Tex. 2026); *Noyola v. Bondi*, 822 F. Supp. 3d 729, 733–34 (W.D. Tex. 2026); *Aliaga Zamora v. Bondi*, No. SA-26-CA-00447-XR, 2026 WL 693054, at *5 (W.D. Tex. Mar. 10, 2026); *Diaz Yanez v. Bondi*, No. EP-26-CV-00486-DB, 2026 WL 690005, at *2 (W.D. Tex. Mar. 4, 2026); *Villegas Angel v. Noem*, No. 1:26-CV-00384-DAE, 2026 WL 594368, at *3-4 (W.D. Tex. Mar. 3, 2026). First, the petitioner in this case does not challenge a registry requirement, which the *Doe* Court assumed *arguendo* implicated a liberty interest, but rather freedom from physical detention, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Second, civil immigration detention is constitutional only when it is justified by a sufficient, non-punitive purpose. *Foucha v. La.*, 504 U.S. 71, 80 (1992); *Betancourth*, 822 F. Supp. 3d at 7676-67 & n.4; *Diaz Yanez*, 2026 WL 690005, at *2. Once a protected interest is implicated, "the right to some kind of prior hearing is paramount." *Aliaga Zamora*, 2026 WL 693054, at *5 (citing, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)); *Villegas Angel*, 2026 WL 594368, at *3. Third, the statutory language indicates that flight risk and danger are not irrelevant to detention under § 1225(b), given that "noncitizens who are detained under § 1225(b) may be released on parole for humanitarian reasons or significant public benefit, so long as they present neither a security risk nor a risk of absconding." *Noyola*, 822 F. Supp. 3d at 734; (cleaned up) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b)); *Aguilar v. Bondi*, 811 F. Supp. 3d 815, 820 n.1 (W.D. Tex. 2025)

November 10, 2023 (Dkt. 16-8), the document does not adequately address the petitioner's presence in the United States for over two years since the notice issued and the liberty interest he acquired during that time based on established connections in the country. *See Thuraissigiam*, 591 U.S. at 107; *Verdugo-Urquidez*, 494 U.S. at 271; *Landon*, 459 U.S. at 34. It also does not show that the petitioner was afforded notice and an opportunity to be heard as to the justification for his current detention. *See J.G.G.*, 604 U.S. at 673 (immigrant detainees "are entitled to notice and opportunity to be heard appropriate to the nature of the case") (cleaned up); *Lopez-Campos*, 175 F.4th at 732.

In the absence of any available procedure to require the respondents to demonstrate danger or another adequate justification for detention, the risk of an erroneous deprivation of the petitioner's liberty interest is high. *See Roth*, 408 U.S. at 569–70 & n.7 ("When protected interests are implicated, the right to some kind of prior hearing is paramount") (citing, *inter alia*, *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Bell v. Burson*, 402 U.S. 535, 542 (1971)). When "the only mechanism Petitioner has to test the propriety of his detention is DHS's discretionary authority," that is "no real test at all." *Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 258 (D. Mass. 2025); *see Destino*, 2025 WL 4010424, at *13 (noting that the risk is heightened by the likelihood of lengthy delays in removal proceedings). This risk of deprivation could be addressed through an individualized assessment such as the bond hearings that respondents, until late 2025, routinely provided to assess a petitioner's danger to community and flight risk. *See Mathews*, 424 U.S. at 335 (courts should assess whether "additional or substitute procedural safeguards" would have "probable value"); *Lopez-Arevelo*, 801 F. Supp. 3d at 686 (an individualized hearing would

10 / 14

provide an opportunity to be heard and a meaningful assessment of the petitioner's dangerousness and flight risk, and thus would "greatly reduce the risk of an erroneous deprivation of his liberty"); *Barros*, 2025 WL 3154059, at \*4 (risk of erroneous deprivation "can be easily ameliorated through a bond hearing"). The Court concludes that the second *Mathews* factor weighs in the petitioner's favor.

The third *Mathews* factor is the respondents' interest in the petitioner's mandatory, unreviewable detention at issue here. The respondents have not addressed this factor and do not argue their interest in detaining the petitioner under § 1225(b). To the extent the respondents rely on their general interest in enforcing the statute, their interest is insufficient to extinguish the petitioner's right to due process. *See Loudermill*, 470 U.S. at 541; *Rincon*, 810 F. Supp. 3d at 112 ("legislation cannot detract from the privilege afforded by the constitution") (cleaned up) (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892), *overruled on other grounds by Kastigar v. United States*, 406 U.S. 441 (1972)). Although courts have recognized a legitimate governmental interest in preventing a detainee's flight and in protecting the community from any danger posed by the detainee, *see, e.g.*, *Gunaydin*, 784 F. Supp. 3d at 1189, these interests could be addressed by providing individualized hearings, as discussed above.[7] Moreover, to the extent the purpose

---

[7] Courts "generally have found that the cost of providing a bond hearing is relatively minimal." *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, 2025 WL 1158841, at \*9 (E.D. Cal. Apr. 21, 2025); *see Tenemasa-Lema*, 810 F. Supp. 3d at 258-59. Additionally, courts have recognized that detention itself imposes significant costs and burdens. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (noting the "substantial social costs" of detention that separates families and removes breadwinners, caregivers, parents, siblings, and employees from the community); *Rodriguez*, 823 F. Supp. 3d at 690 ("Indeed, given the high costs of detention and the potential for removal proceedings to last multiple years, the Government would reduce its

of the detention is punitive, the purpose is impermissible in the context of civil immigration proceedings. *See Foucha*, 504 U.S. at 80. The respondents have not contested the petitioner's relevant representations, including that he has no criminal record, strong community ties, a pending application for relief from removal. The third factor therefore weighs in the petitioner's favor.

Because all three *Mathews* factors weigh in the petitioner's favor, he is detained without due process of law. The Court concludes, in accordance with numerous other courts considering the question, that detention under § 1225(b)(2) as applied to this petitioner, without an individualized assessment or any notice or opportunity to be heard, violates the petitioner's right to procedural due process. The petition for a writ of habeas corpus will be granted. 28 U.S.C. § 2241; 28 U.S.C. § 2243; *see Brown v. Davenport*, 596 U.S. 118, 128 (2022) ("federal courts may grant habeas relief as law and justice require") (cleaned up).

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The remedy for unlawful detention "is, of course, release." *Id*.; *see Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (based on statutory language of 28 U.S.C. § 2241(c)(3) and the common-law history of the writ, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional

---

overall fiscal and administrative burden by detaining only those people who have been determined to pose a danger or flight risk") (citing *Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 34 (D. Mass. 2025) (noting that detention of those who have been denied release on bond or the opportunity to seek release "requires the government to continue funding and overseeing [the petitioner's] detention").

12 / 14

function of the writ is to secure release from illegal custody"). Because the respondents do not acknowledge any process available to the petitioner, "there is no process to await." *See Aroca v. Mason*, 819 F. Supp. 3d 517, 548 (S.D.W. Va. 2026) (cleaned up) (collecting cases).[8] After reviewing the authorities and all matters of record, the Court determines that release is the appropriate habeas relief for the unlawful detention in this case.

The Court therefore **ORDERS** as follows:

1. The respondents' motion for summary judgment (Dkt. 20) is **DENIED**.

2. The petitioner's petition for habeas relief (Dkt. 1) is **GRANTED** in part.

3. The respondents are **ORDERED** to **RELEASE** the petitioner from custody to a public location, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, **within 48 hours of this order**.

4. The respondents are further **ORDERED** to inform the petitioner and petitioner's counsel of the time and location of release **at least three hours before the release**.

5. The respondents are further **ORDERED** to return to the petitioner, at the time of release from custody, any and all identification documents taken from the petitioner at the time of or during detention.

6. Any possible or anticipated removal or transfer of the petitioner under this present detention is **PROHIBITED** and **ENJOINED.**

---

[8]   In light of the Fifth Circuit's holding in *Buenrostro-Mendez*, and because the respondents do not argue that 8 U.S.C. § 1226(a) applies, the Court does not order a bond hearing under § 1226(a).  *See Ahmed M. v. Bondi,* No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases).

7. The respondents may not re-detain the petitioner during the pendency of the petitioner's removal proceedings absent a pre-detention hearing before an immigration judge at which the government demonstrates, by clear and convincing evidence, that the petitioner is a flight risk or a danger to the community. *See Giri v. Lyons*, No. 5:26-CV-00149, ___ F. Supp. 3d _____, 2026 WL 1361557, at *13 (S.D. Tex. May 12, 2026) (collecting authorities).

8. The respondents are further **ORDERED** to file a status report updating the Court **within 72 hours** of this order.

9. All other pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____July 17_____, 2026.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE